UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,              CRIMINAL ACTION NO. 16-cr-20681

        v.                       DISTRICT JUDGE VICTORIA A. ROBERTS

DONTA KWAME STEWART,      MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION
## TO COMPEL DISCOVERY [19]

This matter comes before the Court on Defendant Donta Stewart's Motion to Compel Discovery. (Docket no. 19.) Plaintiff United States of America responded to Defendant's Motion (docket no. 22), and Defendant replied to Plaintiff's Response (docket no. 23). The Motion has been referred to the undersigned for consideration. (Docket no. 20.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

I.     BACKGROUND

Defendant was arrested on August 20, 2016, while attending a block party. Officers Adam Szklarsky, William Zeolla, and Martel Reed of the Detroit Police Department were on routine patrol in a marked police car when, at about 12:45 a.m., they observed the party and stopped to investigate. (Docket no. 19 at 5.) Officer Szklarsky allegedly saw Defendant discard a handgun under a nearby car as the officers pulled up. Officer Zeolla then got out of the police

car and allegedly retrieved the gun from underneath the car. The officers confirmed that Defendant was not a concealed pistol license holder and arrested him. They did not take any witness statements at the scene or record their interactions with Defendant. (*Id.* at 5-6.)

Officer Shannon Richardson of the Bureau of Alcohol, Tobacco, Firearms, and Explosives later determined that Defendant had been convicted of felony armed robbery and felony carjacking in 2008, and that the handgun had "previously travelled in interstate commerce." (Docket no. 1 at 3.) On October 13, 2016, Defendant was indicted on one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). (Docket no. 15.) On November 2, 2016, Defendant filed the instant Motion to Compel. (Docket no. 19.)

Through his Motion to Compel, Defendant seeks a court order compelling Plaintiff to "conduct an initial review of the three officers' disciplinary files," and to produce "all potentially exculpatory evidence" which Plaintiff discovers therein, "before [Defendant] is expected to make a decision about whether to go to trial." (Docket no. 19 at 12.)

## II. GOVERNING LAW

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rather, the discovery available to a criminal defendant is generally limited to those areas set forth in Federal Rule of Criminal Procedure 16 as well as to material whose disclosure is required under *Brady v. Maryland*, 373 U.S. 83 (1963) and the Jencks Act, 18 U.S.C. § 3500. *United States v. Presser*, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988).

*Brady v. Maryland* holds that a defendant's due process rights are violated when the government withholds evidence favorable to the defendant that is material to guilt or sentencing. *Brady*, 373 U.S. at 87. The *Brady* rule extends to evidence which could be used to impeach the

credibility of a government witness "when the reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 153-54 (1972) (citation and internal quotation marks omitted). Evidence is material under *Brady* and *Giglio* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

"The Supreme Court has made clear that the *Brady* rule is not an evidentiary rule which grants broad discovery powers to a defendant." *United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990). "The Court also has made it clear that while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." *Presser*, 844 F.2d at 1281.

Specifically regarding personnel files, the Sixth Circuit has held that the Government is not obligated to produce personnel files of testifying agents for impeachment purposes based solely upon the defendant's speculation that the files may contain impeaching or material information. *See United States v. Driscoll*, 970 F.2d 1472 (6th Cir. 1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999). Hence, a defendant must base his request for personnel files on more than mere conjecture that the files might contain information important to his case. *Id*. at 1482.

Finally, as for the timing regarding disclosure of *Brady* or *Giglio* materials, the Supreme Court has expressly held that the Constitution does not require "preguilty plea disclosure of *impeachment* information." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis added).

**III. ANALYSIS**

Recognizing the limitation on his right to receive impeachment evidence at this early stage imposed by *Ruiz*, Defendant takes the position that, under the circumstances of this case, where there are no witness statements or any other pieces of evidence establishing the gun belonged to Plaintiff other than the Officers' statements about what they observed, any evidence that could be used to impeach the Officers' credibility would actually be exculpatory. And, Defendant argues, Plaintiff *is* required to discover and produce any exculpatory evidence during the plea-negotiation stage of a criminal case in order for Defendant to be able to make a "knowing, voluntary, intelligent, and counseled" decision about whether to enter a guilty plea. (Docket no. 23 at 5.)

There is a split of authority among the Circuit Courts regarding whether the holding in *Ruiz* applies to exculpatory evidence as opposed to impeachment evidence. *See United States v. Quiles*, 618 F.3d 383, 395 (3rd Cir. 2010). Defendant cites a District of Columbia case stating that "the majority of circuits to have considered the issue" have held that a failure to disclose exculpatory information is grounds for allowing a defendant to withdraw a guilty plea. *United States v. Nelson*, 979 F. Supp. 2d 123, 129 (D.D.C. Oct. 25, 2013) (citing pre-*Ruiz* cases from the Second, Sixth, Eighth, and Ninth Circuits, and post-*Ruiz* cases from the Seventh and Tenth Circuits). The Sixth Circuit case cited in *Nelson*, however, actually does not decide the issue; instead, the court "assumed the existence of a *Brady* violation," noting that "there is no authority within our knowledge holding that suppression of *Brady* material *prior to trial* amounts to a deprivation of due process." *Campbell v. Marshall*, 769 F.2d 314, 322 (6th Cir. 1985). Later, in *Robertson v. Lucas*, 753 F.3d 606, 621-22 (2014), in the context of a qualified immunity defense, the Sixth Circuit held that there was "no clearly established obligation to disclose exculpatory *Brady* material . . . in time to be put to effective use in plea bargaining."

4

For its part, Plaintiff cites a post-*Ruiz* case from the Second Circuit, *Friedman v. Rehal*, which states that "the Supreme court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial, and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea." 618 F.3d 142, 154 (2d Cir. 2010) (citations omitted). Plaintiff also cites cases from the Fifth Circuit, which rejects an argument that *Ruiz* should only be applied to impeachment evidence and not to exculpatory evidence (*United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009), and a case from the Fourth Circuit which emphasized that the "*Brady* right, . . . is a trial right," and that the concerns of *Brady* "are almost completely eliminated" when a defendant pleads guilty," but which ultimately declined to resolve the issue of whether "the *Brady* right to exculpatory information, in contrast to *impeachment* information, might be extended to the guilty plea context." *United States v. Moussaoui*, 591 F.3d 263, 285-86 (4th Cir. 2010).

Regardless, however, the Sixth Circuit has explicitly held that, "'so long as the defendant is given impeachment material, *even exculpatory impeachment material*, in time for use at trial, we fail to see how the Constitution is violated.'" *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (emphasis added) (quoting *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988)); *see also United States v. Pegross*, No. 05-80949, 2007 WL 1771542, at *2 (E.D. Mich. June 15, 2007) (Roberts, J.). In *Crayton*, the court distinguished between "explicitly exculpatory" evidence, and impeaching evidence, explaining that "explicitly exculpatory" evidence is evidence that "tend[s] to negate directly the guilt of the defendant." *Id.* at 569; *see also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (describing exculpatory evidence as going "to the heart of the defendant's guilt or innocence," and impeachment

5

evidence as "having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." (citations omitted)). The evidence that Defendant hopes to uncover in the Officers' disciplinary files is evidence of "prior police misconduct," to show "past willingness to break the rules while on duty or cover-up other officers' rule-breaking." (Docket no. 19 at 6, 10.) This is clearly impeachment evidence, even if the credibility of the Officers' testimony in this case is particularly significant. As such, Defendant is not entitled to it at this stage of the proceedings as a matter of constitutional law.

Defendant relies heavily on the case of *United States v. Tutt*, No. 13-cr-20396, 2013 WL 5707791 (E.D. Mich. Oct. 21, 2013), in which District Judge Gershwin Drain granted in part the defendant's motion for a pretrial subpoena *duces tecum* of the arresting officers' personnel records and internal files, where both officers involved in the criminal case had previously been sued for civil rights violations. In that case Judge Drain relied, in part, on the fact that the judge in one of the prior civil rights cases had denied the officer summary judgment based "on the officers' conflicting versions of what occurred." *Id.* at *1. Due to that fact, he reasoned "[t]here may be evidence in [the officer's] personnel and internal disciplinary files associated with the [prior civil rights case] that shed light on the issue of his character for truthfulness," and further that the defendant "must be provided timely access to any evidence bearing on the issue of the officers' honesty." *Id.* at *3. Moreover, and more importantly, Judge Drain's order was entered more than two months *after* the defendant's plea hearing, and "less than thirty days" from the defendant's "fast-approaching trial date." *Id.*

Here, by contrast, the proceedings have been stayed pending resolution of this Motion. And the only proof Defendant has that the Officers' files contain any exculpatory impeachment evidence is (1) the existence of five civil-rights, excessive force lawsuits in which Officer Zeolla

6

was a named defendant, all of which were settled or dismissed on stipulation of the parties,[1] and (2) newspaper articles discussing misconduct by other DPD officers, including falsifying police reports, which misconduct was apparently not disclosed by the government to defense counsel in federal criminal cases involving those officers until after the media reports surfaced. (Docket no. 23 at 4-8.)

The newspaper articles do not make any allegations against the Officers involved in this case and are therefore irrelevant. As for the lawsuits against Officer Zeolla, at least four of the five do not involve any allegations that Officer Zeolla falsified any reports or otherwise acted untruthfully, which is the claim Defendant makes against Officer Zeolla in this case. The Court was not able to review the complaint in the fifth case, *Thomas v. City of Detroit*, No. 11-10850, due to the age of the case. Defendant does not, however, claim that case involved allegations of untruthfulness on the part of Officer Zeolla. The existence of these lawsuits therefore does not suggest that Officer Zeolla's disciplinary file might contain any information which tends to show that he is lying about observing Defendant with the handgun in this case. And it is beyond serious dispute that the lawsuits against Officer Zeolla have no bearing on the credibility of Officers Szklarsky and Reed. For these reasons, the Court will also decline to exercise its discretion to order Plaintiff to review the Officers' disciplinary files before Defendant makes a decision about whether to plead guilty.[2]

---

[1] *See* Docket no. 19 at 6 (citing *Brown v. Taylor*, No. 14-14086 (E.D. Mich., settled March 23, 2016); *Ellsberry v. City of Detroit*, No. 12-10934 (E.D. Mich., dismissed on stipulation on Sept. 30, 2016); *Thomas v. City of Detroit*, No. 11-10850 (E.D. Mich., dismissed on stipulation on May 28, 2013); *Rundel v. City of Detroit*, No. 09-11586 (E.D. Mich., settled June 17, 2010); *Johnstone v. Zeolla*, 00-10450 (E.D. Mich., settled Aug. 2, 2002).

[2] The Court also finds Defendant is not entitled to the issuance of a Rule 17(c) subpoena. Defendant briefly mentions that the Court "should" order such a subpoena, without further argument, for the first time in his Reply. (Docket no. 23 at 2-3.) "Rule 17(c) is 'not intended to provide a means of discovery for criminal cases[,]' rather, 'its chief innovation [is] to expedite

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is not entitled to an order compelling Plaintiff to review the disciplinary files of Officers Szklarsky, Zeolla, and Reed and disclose any exculpatory impeaching evidence prior to entry of Defendant's plea; nor is it appropriate for the Court to order such relief as a matter of discretion.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Discovery [19] is **DENIED**.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated:   February 10, 2017         s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated:  February 10, 2017         s/ Lisa C. Bartlett
                                   Case Manager

---

the trial by providing a time and place before trial for the inspection of subpoenaed materials.'" *United States v. Tutt*, No. 13-cr-20396, 2013 WL 5707791, at *2 (E.D. Mich. Oct. 21, 2013) (quoting *United States v. Nixon*, 418 U.S. 683, 698-99 (1974)).  As such, Defendant's request is premature.